IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PREMIUM ASSIGNMENT CORPORATION )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN INTERNATIONAL )<br>SPECIALTY LINES )<br>)<br>Defendant. ) | Case No.<br>FILED: JUNE 11, 2008<br>08CV3367<br>JUDGE DER-YEGHIAYAN<br>MAGISTRATE JUDGE NOLAN |

## COMPLAINT  PH

Plaintiff, Premium Assignment Corporation ("PAC"), by its counsel, Quarles & Brady LLP, complains against Defendant, American International Specialty Lines ("Specialty") as follows:

## PARTIES

1. Plaintiff, PAC, is a Florida corporation with its primary office address at 3522 Thomasville Road, Suite 400, Tallahassee, Florida, which is licensed to do business as a premium finance company.

2. Defendant, Specialty, is an Alaska corporation with a corporate office located at 300 South Riverside, Suite 2100, Chicago, Illinois. Specialty's registered agent for service of process in Illinois is Michael T. McRaith, the Director of the Department of Financial and Professional Regulation Division of Insurance.

**JURISDICTION AND VENUE**

3.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332, because Plaintiff PAC and Defendant Specialty are citizens of different states, and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(a), because Specialty resides in this district for the purpose of determining venue pursuant to 28 U.S.C. §1391(c), because Specialty, by virtue of it conducting business and having significant contacts in this district, is subject to personal jurisdiction in this district.

**GENERAL ALLEGATIONS**

5.  This action arises out of a premium finance loan under which Plaintiff seeks the return of unearned premiums retained by Defendant, Specialty, as well as additional damages for violation of 215 ILCS 5/143.14(b), plus interest and attorneys' fees, and such other relief as the Court deems appropriate.

6.  On or about May 22, 2007, Neumann Homes Inc. ("Neumann") entered into a premium finance agreement ("Agreement") with PAC, wherein PAC agreed to loan $677,683.00 to Neumann to pay the premium required by Specialty for 12 months of insurance coverage under policy number 7412277 ("Policy"). A copy of the Agreement is attached hereto as Exhibit A.

7.  Pursuant to the Agreement, Specialty received a premium of $741,151.00 for twelve months of insurance coverage and Neumann agreed to repay PAC by making 11 monthly payments of $63,468.00, beginning on June 22, 2007. If Neumann failed to make any payment, the Agreement contained a power of attorney allowing PAC to cancel the Policy. Further,

Neumann validly assigned its interest in the unearned premiums Specialty owed after cancellation of the Policy to PAC as security for Neumann's debt.

8. Specialty issued the Policy, collected the premium, and if necessary, would cancel the Policy and return any unearned premiums owed after the cancellation.

9. PAC is the owner and holder of the Agreement.

10. In November 2007, Neumann commenced a voluntary case under Chapter 11, Title 11 United States Code (the "Bankruptcy Case") case number 07-20412, in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"). In December 2007, Neumann failed to make the monthly payment to PAC as required by the Agreement.

11. On or about February 20, 2008, PAC obtained an order from the Bankruptcy Court that modified the automatic stay, allowing PAC to cancel the Policy effective December 3, 2007. A copy of the order is attached hereto as Exhibit B.

12. Upon cancellation, PAC, as the financer of the Policy, was entitled to a return of the unearned premiums.

13. On or about February 25, 2008, PAC sent Specialty the order and a cancellation notice, which validly effected a cancellation and entitled PAC to the unearned premiums. A copy of the cancellation notice is attached hereto as Exhibit C.

14. Specialty refused to return the unearned premiums to PAC because it wrongly claimed Neumann owed it outstanding premiums under a different policy. In fact, either such premiums were not owed, or if they were, there was no right of offset against them.

15. On or about April 8, 2008, PAC sent a letter to Specialty requesting payment of the unearned premiums. Specialty once again wrongly failed to pay the premiums. A copy of the letter is attached hereto as Exhibit D.

16. On or about May 20, 2008, PAC again contacted Specialty regarding the unearned premiums. Specialty has not responded and continues still to wrongly not pay over the premiums. A copy of the e-mail is attached hereto as <u>Exhibit E</u>.

17. To date, Specialty has refused to return not less than $159,896.00 of the unearned premiums to PAC.

## COUNT I
### Failure to Return Unearned Premium as Required by Statute

18. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 17 as paragraph 18 of this Court I.

19. 215 ILCS 5/143.14(b) requires an insurance company to return unearned premiums owed after cancellation of a financed insurance policy to the premium finance company that paid for the policy within 60 days from the time of the cancellation.

20. Despite PAC's numerous demands for return of the unearned premiums, Specialty has refused to return any unearned premiums, and it continues to wrongfully hold the unearned premiums in violation of Illinois statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter Final Judgment in favor of Plaintiff and against the Defendant for the principal amount of not less than $159,896.00, together with any additional unpaid principal and/or advances, interest, late charges, costs and attorneys' fees, and to grant such other and additional relief as this Court may deem just and equitable.

## COUNT II
### Unjust Enrichment (In The Alternative)

21. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 20 as paragraph 21 of this Count II.

22. Pursuant to the Agreement, Specialty received a premium of $741,151.00 for twelve months of insurance coverage for Neumann from PAC.

23. After six months of payment, Neumann defaulted and PAC cancelled the Policy.

24. Because of Neumann's default and PAC's cancellation of the Policy, Specialty was required to return the unearned premiums of the Policy to PAC.

25. Specialty has refused to return the unearned premiums despite PAC's numerous demands for the premiums.

26. Specialty has been unjustly enriched to the detriment of PAC in the amount of not less than $159,896.00. Specialty's retention of the premiums without returning them to PAC violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff respectfully requests this Court to enter Final Judgment in favor of Plaintiff and against the Defendant for the principal amount of at least $159,896.00, together with any additional unpaid principal and/or advances, interest, late charges, costs and attorneys' fees, and to grant such other and additional relief as this Court may deem just and equitable.

Respectfully submitted,

PREMIUM ASSIGNMENT CORPORATION

By: /s/ Vilan Odekar
One of Its Attorneys

John Collen (ARDC # 3127874)
jcollen@quarles.com
Vilan Odekar (ARDC #6293496)
vodekar@quarles.com
QUARLES & BRADY LLP
500 West Madison Street
Suite 3700
Chicago, Illinois 60661
(312) 715-5000
(312) 715-5155 (fax)

QBACTIVE\6276844.1

**PREMIUM ASSIGNMENT CORPORATION**

PREMIUM FINANCE AGREEMENT

Illinois  
P.O. Box 3066 - 3522 Thomasville Rd.  
Tallahassee, FL 32315  
Phone 850-907-5610

☐ PERSONAL   ☒ COMMERCIAL   ☐ NEW   ☒ AGENCY RENEWAL   ☐ ADD'L PREMIUM

THIS AGREEMENT, made effective the 22 day of May 2007, between

NEUMANN HOMES INC  
(Name of Borrower/Insured exactly as it appears in financed policies)   SSN OR TAX # _____

ADDRESS 4355 WEAVER PKY  
CITY WARRENVILLE   STATE IL   ZIP 60555   PHONE # _____

hereinafter called the Borrower, and Premium Assignment Corporation, a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | − CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL INTEREST RATE |
|---|---|---|---|---|---|---|---|
| 741,151.00 | 63,468.00 | 677,683.00 | 0.00 | 677,683.00 | 20,465.00 | 698,148.00 | 5.99 |

SELECT BILLING OPTION: ☐ Payment Book  ☒ Monthly Invoice

YOUR PAYMENT SCHEDULE WILL BE:  
Each monthly payment due on same day of each succeeding month until paid in full.

| Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|
| 63,468.00 | 11 | 6/22/2007 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Interest Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

1. **SECURITY FOR PAYMENT:** To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

2. **LIMITED POWER OF ATTORNEY:** BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

3. **NOTICE TO BORROWER:** (1) Do not sign this Agreement before you read it, or if it contains any blank space (other than as provided on the next page), (2) You are entitled to have and should retain a completely filled in copy of this Agreement to protect your legal rights, (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge, and (4) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT.

SIGNATURE OF ALL INSURED[S] NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED[S], AS PERMITTED BY LAW:

5/21/07 X /s/ _____   5/21/07 _____  
Date    Name and Title: Kenneth P. Neumann, CEO   Date   Name and Title:

**PRODUCER'S REPRESENTATIONS & WARRANTIES:**

The undersigned Producer represents and warrants that: (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower. (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement. Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower. Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.

PRODUCER / AGENCY  
Name    COLUMBIAN AGENCY INC  
Address  P O BOX 39  
         NEW LENOX, IL 60451

5/22/07  
Date    PRODUCER'S SIGNATURE /s/ R.G. McWethy

Page 1 of 3


EXHIBIT A

# PREMIUM ASSIGNMENT
CORPORATION

IN CONSIDERATION of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 3 (or the agents of such companies), the Borrower agrees:

**4. ACCEPTANCE DATE** This Agreement is binding upon its acceptance by Lender. Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

**5. PAYMENTS** Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender. Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

**6. LATE CHARGES** If a payment is more than 5 days late, Borrower agrees to pay a late charge of 5% of the delinquent installment, unless prohibited by applicable law.

**7. DEFAULT/CANCELLATION** A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and Late Charges, or if Borrower fails to carry out any other obligations under this Agreement. After default, any unpaid balance of the Total Amount Financed shall become immediately due and payable in full and Lender may enforce its security interest and its rights under the Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid. Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

**8. EXCESS INTEREST OR FEES** It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement. In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

**9. REFUNDS** The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to applicable law subject to a nonrefundable service charge of $20.

**10. SHORTAGE OR OVERAGE OF RETURNED PREMIUM** If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand. Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender. If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law. Borrower has no right to any excess of less than the minimum amount required to be paid by applicable law.

**11. ATTORNEYS FEES/COURT COSTS** Borrower agrees to pay all attorneys fees, expenses and costs incurred by Lender in collecting amounts due from Borrower under this Agreement, including attorneys fees incurred on appeal and in bankruptcy, unless prohibited or limited by applicable law.

**12. LENDER RELATIONSHIP** Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company, (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage, (c) Lender has played no part in the selection or structuring of the financed insurance policies, (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement, and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

**13. ADDITIONAL PREMIUMS** Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due, less normal down payment, adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement. However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium. Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

**14. LENDER LIABILITY** Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law. Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation. Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

**15. RETURNED CHECKS** Borrower agrees to pay a returned check fee, as allowed by applicable law, for each of Borrower's checks returned to Lender for Insufficient funds or because the insured has no account in the payor bank.

**16. WARRANTIES OF BORROWER** Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower, and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

**17. INTEREST CALCULATION** Interest is computed on an annual basis of 12 months of 30 days on the balance of the Total Amount Financed, from the effective date of the earliest insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

**18. BLANK SPACES** Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

**19. GOVERNING LAW** The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

**20. SAVINGS CLAUSE** The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable.

**21. FINANCING OPTION** Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.



IED: May 22, 2007; State: IL

## SCHEDULED POLICIES OF INSURANCE

V7.1a(0)F0.0016.10

NEUMANN HOMES INC
4355 WEAVER PKY
WARRENVILLE, IL 60555

COLUMBIAN AGENCY INC         14024
P O BOX 39
NEW LENOX, IL 60451
(815) 485-4100

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 741,151.00 | 63,468.00 (8.56 %) | 677,683.00 | 0.00 | 677,683.00 | 20,465.00 | 698,148.00 |
| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
| 63,468.00 | 11 | 5.99 % | 6/22/2007 | INVOICE | RENEW | COMMERCIAL |

| EFF DATE / EXP DATE | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 5/22/2007 5/22/2008 | CO: AMER INTL SPEC LINE MGA: | CHICAGO | IL | 85767 | UMBR 0.00 % | | 709,236.00 |
| | | | | | | Taxes/Fees | 31,915.00 |
| | | | | | | Total | 741,151.00 |

Created By: UFVR12                                   Auth Code: _____

### ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,   except those policies indicated with an "X".

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No: _____

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**

IN THE UNITED STATE BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 07-20412 |
| | ) | Chapter 11 |
| NEUMANN HOMES, INC., | ) | |
| | ) | |
| | ) | Hon. Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | |
| | ) | |

### AGREED ORDER MODIFYING THE AUTOMATIC STAY

THIS CAUSE, coming to be heard on the Motion of Secured Creditor, Premium Assignment Corporation ("PAC"), to Terminate the Automatic Stay (the "Motion"); due notice of the Motion having been given to all parties entitled thereto; the Court having considered the Motion, the evidence presented and the statements made by counsel; the parties having agreed hereto;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The automatic stay provided for pursuant to 11 U.S.C. § 362(a) is hereby modified pursuant to 11 U.S.C. § 362(d) to the limited extent necessary to permit PAC to cancel certain Scheduled Policies of Insurance as identified in the Premium Financing Agreement dated May 22, 2007 ("PFA") nunc pro tunc to December 3, 2007, recover the unearned premiums, and to apply any such unearned premiums to satisfy its claim under the PFA against the above-captioned debtors (the "Debtors"); provided that, if the amount of unearned premiums exceeds PAC's claim against the Debtors under the PFA, PAC shall promptly tender the amount of the excess unearned premiums to the Debtors.

QBACTIVE\132031.00002\6054049.2


EXHIBIT B

3. There is no just cause for delaying enforcement of this order, therefore, pursuant to Bankruptcy Rule 4001(a)(3), the otherwise applicable ten day stay of enforcement shall not apply to this Order.

4. This Court retains jurisdiction to construe and enforce this Order.

| NEUMANN HOMES, INC. | PREMIUM ASSIGNMENT CORP. |
|---|---|
| *[signature]* | *[signature]* |
| One of Its Attorneys | One of Its Attorneys |
| George Panagakis<br>Stephen Williamson<br>Skadden, Arps, Slate,<br>  Meagher & Flom LLP<br>333 West Wacker Drive<br>Chicago, IL 60606 | John Collen<br>Lauren Nachinson<br>Quarles & Brady LLP<br>500 West Madison, Suite 3700<br>Chicago, IL 60611 |

ENTER:

*[signature]*

Honorable Eugene R. Wedoff
United States Bankruptcy Judge

2 0 FEB 2008

QBACTIVE\132031.00002\6054049.2



Post Office Box 3066 | Tallahassee | Florida | 32315-3066
850.907.5610 | www.premiumassignment.com

## NOTICE OF CANCELLATION

08CV3367
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

PH

AMERICAN INTL SPEC LINE
300 S RIVERSIDE STE 2100
CHICAGO IL 60606 6613

CANCELLATION DATE: 12/03/2007

| | | | |
|---|---|---|---|
| ACCOUNT NUMBER: | 390788 | INSTALLMENT DUE: | 11/22/2007 |
| ACCOUNT BALANCE: | $341,190.40 | INSTALLMENT AMT: | $63,468.00 |

POLICY NUMBER: 7412277

You are hereby notified that the policy described above is cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement, which incorporates a power of attorney. This cancellation is effective one day after the above captioned date, at the hour indicated in the policy as the effective time.

Per applicable state law, gross unearned premium shall be returned to the premium finance company.

If the policy or any statute requires the insurer to give notice to a mortgagee, governmental agency, or other third party before the policy can be cancelled, the insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party within the time required by applicable state law and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.

AGENT:
COLUMBIAN AGENCY INC
PO BOX 39
NEW LENOX IL 60451

INSURED:
NEUMANN HOMES INC
JANICE SKUPIEN
4355 WEAVER PKY
WARRENVILLE IL 60555

Any payment received after mailing of this Notice of Cancellation
to the insurance company will not reinstate the policy.



EXHIBIT C



Kelton M. Farris | VP/Collections, Attorney
3522 Thomasville Road | Suite 400 | Tallahassee | Florida | 32309
850.907.5312 | Kelton.Farris@SunTrust.com
850.894.1518 fax

April 8, 2008

Via Fax No. (866) 947-2650

Ms. Velma Threatt
AIG

08CV3367
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

PH

Re:  Neumann Homes, Inc. / Policy # 7412277
PAC Loan Number 390788

Dear Ms. Threatt:

Premium Assignment Corporation ("PAC") financed the purchase of the policy identified above in May of 2007 pursuant to the attached premium finance agreement. Neumann Homes stopped paying PAC in December of 2007, after filing bankruptcy in November. PAC obtained the enclosed order from the bankruptcy court in February allowing cancellation of the financed policy on December 3. PAC sent AIG the order and enclosed cancellation notice in February, but you are apparently refusing to return an unearned premium because of an outstanding premium Neumann Homes owes AIG for workers' comp policy # 3425060.

Please note that applicable law requires AIG to cancel on request of a premium finance company "as if the request for cancellation had been submitted by the named insured" and "return whatever gross unearned premiums are due under the insurance contract…to the premium finance company…within 60 days." (Ask your attorneys to see 215 ILCS 5/513a11(c) and 5/143.14(b) of the Illinois Insurance Code.) Nothing allows AIG to withhold an unearned premium owed to a premium finance company because the insured owes AIG money under another policy.

PAC is owed $341,190.40 under the loan that financed this policy, and we expect the unearned premium to be approximately $333,000, calculated on a pro rata basis. If AIG does not return this unearned premium to PAC by May 1, PAC will report your company to the Illinois Department of Insurance for failing to return unearned premiums owed on behalf of an Illinois insured. For a balance this size, PAC will also ask our outside attorneys who obtained the enclosed order to sue your company for the unearned premium owed under this policy.

Please ask your attorneys to review this matter as quickly as possible.

A SunTrust Company



EXHIBIT D

-2-                                                              April 8, 2008

Thank you,

*[signature]*

Kelton M. Farris
Vice President and Counsel

cc:     Velma.Threatt@aig.com; Phillip.Maraldi@aig.com; John.Gottschall@aig.com
        Michelle Gerischer, Columbian Agency

JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

PH

| | |
|---|---|
| From: | Farris.Kelton [Kelton.Farris@suntrust.com] |
| Sent: | Friday, May 30, 2008 1:04 PM |
| To: | John.Gottschall@aig.com; Velma.Threatt@aig.com |
| Cc: | Phillip.Maraldi@aig.com; MGerischer@Columbianagency.com; Mike.Kirschgessner@aig.com; Collen, John |
| Subject: | RE: Neumann Homes - Policy #7412277 / PAC #390788 |
| Attachments: | IllinoisComplaint AIG Neumann.doc |

Having received no response to the message below, I am sending the attached letter to the Illinois Division of Insurance today.

I will also ask PAC's attorney to file suit against AIG next week to recover the unearned premium owed under the policy identified above.

**From:** Farris.Kelton
**Sent:** Tuesday, May 20, 2008 12:44 PM
**To:** 'Velma.Threatt@aig.com'; 'John.Gottschall@aig.com'
**Cc:** 'Phillip.Maraldi@aig.com'; 'MGerischer@Columbianagency.com'; Flynn.Kelly; Lewis.Maryedna; Jefferson.Ty; Williams.Nancy.M
**Subject:** Neumann Homes - Policy #7412277 / PAC #390788
**Importance:** High

Ms. Threatt and Mr. Gottschall,

I sent the message below in April, and it looks like all AIG has done since then is return an endorsement credit of $181,294. PAC received the check yesterday, but we have been waiting for it since December. After applying the check, PAC still has a balance of $159,896 under the loan that financed Neumann's policy. While I appreciate finally receiving the $181,294 credit, I also received word yesterday that AIG still has not processed the cancellation of this policy. In fact, it appears that John Gottschall just got around to requesting the file from New York and doesn't have any idea when the cancellation will be processed or the amount of unearned premium will be calculated.

This is unacceptably slow, even under the sluggish standard that apparently applies to AIG companies when it comes to canceling policies and returning unearned premiums. John has apparently been processing this cancellation since February, and calculating the unearned premium should not be that difficult. To the extent an audit should have been performed, AIG waived that right by failing to commence the audit within the 60 days applicable law allows. So the unearned premium under Neumann's policy needs to be calculated pro rata and returned to PAC this month.

If someone from AIG, preferably someone from your legal department, does not commit to resolving this matter by the end of this week, I will write the Illinois Department of Insurance on Tuesday, May 27, about AIG's failure to return an unearned premium owed on behalf of an Illinois insured, and PAC will also begin legal proceedings against AIG to obtain the unearned premium owed under Neumann's policy.

Thank you,

Kelton Farris
Vice President and Counsel
Premium Assignment Corporation
(850) 907-5312

**From:** Farris.Kelton
**Sent:** Tuesday, April 08, 2008 1:22 PM


EXHIBIT E

6/4/2008

**To:** 'Velma.Threatt@aig.com'
**Cc:** 'Phillip.Maraldi@aig.com'; 'John.Gottschall@aig.com'; 'MGerischer@Columbianagency.com'; Flynn.Kelly; Lewis.Maryedna; Jefferson.Ty
**Subject:** RE: Neumann Homes - Policy #7412277 / PAC #390788
**Importance:** High

Ms. Threatt,

Premium Assignment Corporation ("PAC") financed the purchase of the policy identified above in May of 2007. Neumann Homes stopped paying PAC in December of 2007, after filing bankruptcy in November, and PAC obtained an order from the bankruptcy court in February allowing cancellation of the policy on December 3. PAC sent AIG the order and a cancellation notice in February, but you are apparently refusing to return an unearned premium because of an outstanding premium Neumann Homes owes AIG for workers' comp policy # 3425060. (I am sending you a copy of PAC's premium finance agreement, the bankruptcy court order and cancellation notice by facsimile with the attached letter.)

Please note that applicable law requires AIG to cancel on request of a premium finance company "as if the request for cancellation had been submitted by the named insured" and "return whatever gross unearned premiums are due under the insurance contract…to the premium finance company…within 60 days." (Ask your attorneys to see 215 ILCS 5/513a11(c) and 5/143.14(b) of the Illinois Insurance Code.) Nothing allows AIG to withhold an unearned premium owed to a premium finance company because the insured owes AIG money under another policy.

PAC is owed $341,190.40 under the loan that financed this policy, and we expect the unearned premium to be approximately $333,000, calculated on a pro rata basis. If AIG does not return this unearned premium to PAC by May 1, PAC will report your company to the Illinois Department of Insurance for failing to return unearned premiums owed on behalf of an Illinois insured. For a balance this size, PAC will also ask our outside attorneys to sue your company for the unearned premium owed under this policy.

Please ask your attorneys to review this matter as quickly as possible.

Thank you,

Kelton Farris
Vice President and Counsel
Premium Assignment Corporation
(850) 907-5312